1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

                    Plaintiff,

         vs.                    CRIMINAL ACTION NO. 1:13CR9


DAVID REES,

                    Defendant.

                         - - -

    Proceedings had in the Plea Hearing of the above-styled

action on May 13, 2013, before the Honorable John S. Kaull,

Magistrate Judge, at Clarksburg, West Virginia.

APPEARANCES:

FOR THE GOVERNMENT:  ROBERT H. MCWILLIAMS, JR., ESQUIRE
                     Assistant United States Attorney
                     P.O. Box 591
                     Wheeling, West Virginia   26003
                     304-234-0100


FOR THE DEFENDANT:   TODD R. MEADOWS, ESQUIRE
                     Gianola, Barnum & Wigal, LC
                     1714 Mileground
                     Morgantown, West Virginia   26505
                     304-291-6300

                     JOSEPH P. GRIMES, ESQUIRE
                     Grimes & Grimes, LLC
                     1230 Brace Road
                     Cherry Hill, New Jersey   08034-3211


Proceedings recorded utilizing digital recording, transcript
produced by computer-aided transcription.

_____

**LINDA L. BACHMAN, CCR, CVR-M, OFFICIAL REPORTER**
**P.O. BOX 969, CLARKSBURG, WEST VIRGINIA   26302-0969**
**304-282-0395**

2

**I N D E X**

| WITNESSS | DIRECT | CROSS | REDIRECT | RECROSS |
|----------|--------|-------|----------|---------|

(For the Government)

Jason Gandee                    44        47

    Examination by The Court - Page 49



Defendant Sworn - Page 3

3

P R O C E E D I N G S

1

2          (05-13-2013, 9:58 o'clock a.m., defendant present)

3          THE COURT:  Good morning everyone.  Would the Clerk

4    please call the next matter?

5          THE CLERK:  United States of America versus David

6    Rees, Case Number 1:13CR9.  The defendant is present in

7    person.  This matter comes on for initial appearance,

8    arraignment and plea hearing.  Will counsel please note

9    their appearance for the record?

10          MR. MCWILLIAMS:  Good morning, Your Honor.  Robert

11    H. McWilliams, Jr., for the United States.

12          MR. GRIMES:  Good morning, Your Honor.  Joseph

13    Grimes, Grimes and Grimes from Philadelphia and Cherry Hill,

14    New Jersey and I have my local counsel Todd Meadows with me

15    today.  Mr. Rees is present.

16          THE COURT:  All right.  Thank you.  Mr. Rees,

17    would you please stand in your place, raise your right hand

18    and be sworn?

19      (Defendant Standing)

20      (The Defendant was sworn)

21          THE CLERK:  You may be seated.

22      (Defendant Seated)

23          THE COURT:  Mr. Rees, I've had you sworn in order

24    to answer a number of questions.  If there's any question

25    that I ask you that you don't understand for any reason, I

4

1    want you to tell me that you don't understand it before you

2    try to answer it.  If you need to talk with your counsel at

3    any time, you have a right to do that.  You have a right to

4    privacy when you do talk to counsel.  This is a small room.

5    The microphone in front of you is broadcasting and recording

6    what you have to say, so you'll need to mute that and either

7    talk softly or ask for a recess.  I'll grant a recess so you

8    can go outside and talk in private with counsel.  Do you

9    understand that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  You are required to give truthful

12    answers to the questions that the Court asks you.  If you

13    give false testimony in response to a question that is

14    material to the matter before the Court, you could be

15    separately charged with perjury or false swearing while

16    under oath or you could be cited for contempt of court.

17    Whether cited or charged, if you would be later convicted of

18    the citation and/or charge, you could face fine and/or

19    imprisonment.  That fine and/or imprisonment would be in

20    addition to any fine and/or imprisonment you may face by

21    this proposed plea of guilty to the one count Information

22    which I believe charges--let me step back a moment--two

23    counts Information with charges you with tax evasion for the

24    year 2006 and filing a false tax return in Count Two.  Do

25    you understand that?

5

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  I want to encourage you at any time

3  during this proceeding and since your counsel haven't been

4  in front of me before, Mr. McWilliams knows this, my plea

5  proceedings take a relatively long time compared to some

6  District Judges and others.  I try to make sure I don't see

7  you again in a Rule 11 proceeding later on--or not a Rule 11

8  but a 2255 later on.  So I'm fairly careful to make sure

9  that you understand and that any plea that you make is

10  knowingly and voluntarily made, intelligently made and that

11  you make it understanding the potential consequences of that

12  plea of guilty and what rights you're giving up and that

13  you're competent, of course, to enter a plea of guilty.  Do

14  you understand all of that, sir?

15      THE DEFENDANT:  Yes, Your Honor.

16      THE COURT:  And that's why I encourage you at any

17  time to talk with your lawyer.  That's what you have a

18  lawyer for.  Do you understand that, sir?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  You're not going to offend me by

21  wanting to talk to your lawyer.

22      All right.  My understanding is that this is pursuant to

23  a written plea agreement which is dated March 21st of 2011.

24  Is that correct, Mr. McWilliams?

25      MR. MCWILLIAMS:  That is correct, Your Honor.

6

1          THE COURT:  And you have that and are ready to

2     summarize that for us.  Do you have a copy, Mr. Rees?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Now what we're going to do is have Mr.

5     McWilliams go through that fairly quickly outlining the key

6     provisions in it.  I want you to follow along so it is

7     refreshed in your mind and you can answer questions about it

8     later on.  All right?

9          THE DEFENDANT:  Yes, sir.

10          MR. MCWILLIAMS:  Your Honor, paragraph one

11     indicates that he will plead guilty to Count One of the

12     Information charging him with tax evasion for tax years

13     2006.

14          Paragraph two sets forth the maximum penalty that

15     he could be exposed to which is imprisonment for a term of

16     not more than five years, a fine of not more than two

17     hundred and fifty thousand dollars, and a period of

18     supervised release of at least two years and not more than

19     three years, as well as there's the requirement of a special

20     mandatory assessment of a hundred dollars.

21        Paragraph three indicates that he will be truthful and

22     cooperative with representatives of the United States

23     Attorney's Office.

24        Paragraph four makes it clear that the information he

25     provides to us can't be used against him; at least to the

1   extent that we will contend that his guideline level is 27

2   or lower.

3        Paragraph five indicates we'll tell the Court about his

4   cooperation at sentencing.

5        And then paragraph six the parties stipulate he

6   committed the offense contained in Count Two of the

7   Information, which is filing a false last quarter 2006

8   return on a Form 941, and that that would be relevant

9   conduct for the count--for the count of conviction and would

10  include his role in the offense and all tax for tax years

11  2005 through 2009 for all personal and 941 returns.

12  `    He agrees to pay restitution in full on all relevant

13  conduct for tax years 2005 through 2009 and paragraphs 6a

14  through f outline--I'm sorry, outline how those payments

15  will me made.

16       Paragraph seven, the parties stipulate that relevant

17  conduct provable by the United States will not exceed a loss

18  of--more than one million dollar loss, sophisticated means

19  enhancement and role in offense for 941 charge.

20       Paragraph eight makes it clear that the defendant may

21  contend his relevant conduct is less than a million dollars

22  and he can contend that the enhancement for sophisticated

23  means and role in the offense are not applicable.

24       Paragraph nine makes it clear that these are nonbinding

25  recommendations in the plea agreement and should the Court,

8

1    at sentencing, not follow the United States'

2    recommendations, he will not be able to withdraw his guilty

3    plea.

4        Provided he pays the hundred dollar special assessment

5    fee on or before the day of sentencing, I make the following

6    nonbinding recommendations and these are in paragraph ten.

7        If, in the opinion of the United States Attorney's

8    Office the defendant accepts responsibility, and the

9    Probation Officer also concurs, then the United States will

10   recommend a two level reduction for acceptance of

11   responsibility and three levels, if applicable.  United

12   States will recommend that any sentence of incarceration

13   imposed should be at the lowest end of the applicable

14   guideline range.

15       Paragraph eleven sets forth some conditions under which,

16   if he basically breaks the plea agreement, the United States

17   can also break the plea agreement.

18       Paragraph twelve makes it clear that the United States

19   has the right to provide the Court and the Probation Officer

20   information about the defendant's background, offense and

21   other pertinent things for the purpose of sentencing.

22       Paragraph thirteen makes it clear that the sentencing

23   guidelines are now advisory and no longer mandatory and that

24   the Sentencing Court may ascertain and impose a sentence

25   below or above the applicable guideline range, so long as

9

1  that sentence is reasonable and within the statutory maximum

2  as described earlier.

3      Paragraph fourteen indicates that the defendant will

4  retain his appellate rights and rights to collaterally

5  attack the sentence only with respect to--with respect to

6  any sentence imposed using a total offense level before any

7  reduction for acceptance of responsibility higher than level

8  20.

9      Paragraph fifteen indicates that if the defendant's plea

10 is not accepted by the Court or is later aside or if the

11 defendant breaches any part of the agreement, then the

12 United States Attorney's Office will have the right to void

13 the agreement.

14     And paragraph sixteen finally makes it clear, Your

15 Honor, that these six pages contain the entire agreement

16 between Mr. Rees and the United States.  In other words

17 there's no other side deals.  There's no oral promises.

18 Everything we've agreed to is right here in this writing.

19     I would ask Mr. Grimes if he could provide the original

20 to me, I would appreciate it.

21          MR. GRIMES:  I mailed it to you.

22          MR. MCWILLIAMS:  Well, I couldn't find the original

23 signed copy in my file the other day but this is a true and

24 correct copy.

25          THE COURT:  All right.  Thank you.

1     Mr. Rees, were you able to hear and follow the

2     summarization?

3               THE DEFENDANT:  Yes, Your Honor.

4               THE COURT:  Is the agreement I'm now holding up in

5     my hand and which was just handed to me by Mr. McWilliams,

6     the agreement that contains the entirety of your deal with

7     the United States Attorney's Office?

8               THE DEFENDANT:  Yes it is.

9               THE COURT:  It's ordered filed and made a part of

10    the record.

11              Under *Frye* is this the sole offer that was made to

12    this defendant, Mr. McWilliams?

13              MR. MCWILLIAMS:  You know, Your Honor, I really

14    can't remember.  It's certainly the best offer.

15              THE COURT:  Okay.

16              MR. MCWILLIAMS:  Let's put it that way.  I mean

17    this case has been going now for several years.  We've been

18    discussing it back and forth over those years, Mr. Grimes

19    and I, but I'm sure that's the best offer we've made.

20              THE COURT:  Mr. Grimes, do you agree that there may

21    have been other offers but that this is the best of the

22    offers?

23              MR. GRIMES:  That is correct.  We went back and

24    forth on the numbers and there' still some issues obviously

25    as we talk about the numbers but this is the best offer.

1          THE COURT:  And did you discuss with your client

2    each and every offer as it came down?

3          MR. GRIMES:  Absolutely.

4          THE COURT:  Do you concur in that, Mr. Rees?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  I think that satisfies

7    *Frye.*

8      All right.  Mr. Rees, what you're pleading guilty to is

9    a Class D felony, I believe.  Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you understand that, as a person who

12    is pleading guilty to a felony, you have a right to have

13    today's proceeding conducted by the United States District

14    Judge who holds court in this District--portion of the

15    District?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  I'm not that--I am not a District

18    Judge.  I'm what's called a United States Magistrate Judge.

19    I think the best way to say it is a District Judge doesn't

20    need your permission to proceed today.  I, however, cannot

21    proceed unless you give consent.  If you give consent it

22    must be your own free, voluntary, willing decision to give

23    consent.  If you give consent what I will do is conduct this

24    Rule 11 proceeding, ask the appropriate questions, or what I

25    believe are the appropriate questions.  At the conclusion of

1   it I will hear whatever plea it is you may make to the one

2   count Information--the count in the Information you're going

3   to plead guilty to and decide from the evidence that follows

4   that whether it's appropriate to accept it or not.  If so,

5   then I will write an order to that effect.  If not, I will

6   also write an order to that effect and give my reasonings.

7   Do you understand all of that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  The District Judge will still be the

10  Judge who will sentence you.  In no event could I ever

11  sentence you in a felony case.  Do you understand that, sir?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT: And the overall reason is a District

14  Judge is appointed by the President of the United States

15  under Article III of the United States Constitution and has

16  constitutional authority under that Article.  A Magistrate

17  Judge is a statutorily appointed position with limited

18  statutory authority and I'm acting within the limits--strict

19  limits of my statutory authority if you consent.  Do you

20  understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you want to consent?

23             THE DEFENDANT:  I do.

24             THE COURT:  Is that your own free, voluntary,

25  knowing and intelligent decision?

13

1          THE DEFENDANT:  Yes it is.

2          THE COURT:  I'm going to provide you with a form.

3   If you're willing to put it in writing you may sign that

4   form after reviewing it at counsel's table.

5     (Pause - Counsel and Defendant reviewing document)

6          THE COURT:  The defendant's written Waiver and

7   Consent is ordered filed and made a part of the record.

8       Mr. McWilliams, I take it that the Government is the

9   sole victim in this particular matter?

10          MR. MCWILLIAMS:  Yes, Your Honor.

11          THE COURT:  And the Government's representative is

12   seated next to you?

13          MR. MCWILLIAMS:  Yes, Your Honor.

14          THE COURT:  All right.  Very good.

15       Mr. Rees, what is your full name?

16          THE DEFENDANT:  David Allen Rees.

17          THE COURT:  And how old a man are you?

18          THE DEFENDANT:  Fifty (50).

19          THE COURT:  How far did you go in school?

20          THE DEFENDANT:  Junior in college.

21          THE COURT:  I will take it that you can read,

22   write, speak and understand English?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Are you having any problems seeing in

25   order to read today?

14

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Are you having any problems hearing?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Are you having any problems

5    concentrating?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Then you have understood everything

8    that I have either asked or told you in your presence?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Have you been treated for a mental

11   illness in the last six months?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  Have you been treated for addiction to

14   narcotic drugs within the last sixty days?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Is your mind clear as we speak

17   together?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Mr. Grimes, you've worked with this

20   client for what, years?

21         MR. GRIMES:  I think it's been going on three years

22   now, Your Honor.  (Unintelligible/inaudible)

23         THE COURT:  All right.  Back to you, Mr. Rees,

24   within the last twenty-four hours have you been under the

25   influence of any kind of a controlled substance?  That would

1    include a street drug.  That would include prescription

2    medications that are controlled substances, whether they're

3    prescribed for you or another person, or over the counter

4    medications that are strong enough to have effects on your

5    cognitive functions.

6              THE DEFENDANT:  Prescription drugs, Your Honor.

7              THE COURT:  What kind of prescription drugs are you

8    taking?

9              THE DEFENDANT:  Nexium.

10             THE COURT:  All right.  That's ordinarily something

11   to do with reflux.

12             THE DEFENDANT:  Acid reflux; right.

13             THE COURT:  All right.  What else?  Anything?

14             THE DEFENDANT:  Propecia.

15             THE COURT:  And what are you taking Propecia for?

16             THE DEFENDANT:  Hair loss.

17             THE COURT:  And what else?

18             THE DEFENDANT:  Humira.

19             THE COURT:  And what are you taking Humira for?

20             THE DEFENDANT:  Psoriatic arthritis.

21             THE COURT:  Now that's the Phil Mickelson

22   advertised drug?

23             THE DEFENDANT:  That's correct, Your Honor.

24             THE COURT:  All right.  What else?

25             THE DEFENDANT:  That's it.

16

1          THE COURT:  Does the Nexium or the reflux disease

2     that you take the Nexium for in any way impact your ability

3     to hear, understand, and respond to my questions, talk with

4     your lawyer about your case or make decisions about your

5     case?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Does the Propecia or the condition that

8     you take it for in any way affect your ability to hear,

9     understand and respond to my questions, talk with your

10    lawyer about your case or make decisions about your case?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Does the Humira or the psoriatic

13    arthritis that you take it for in any way impact your

14    ability to hear, understand and respond to my questions,

15    talk with your lawyer about your case or make decisions

16    about your case?

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  Do the combination of those drugs or

19    the conditions or the effects of those conditions in any way

20    affect your ability to hear, understand and respond to my

21    questions, talk with your lawyer about your case or make

22    decisions about your case?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Have you consumed alcohol in any form

25    in the last twenty-four hours?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  When and what and how much?

3          THE DEFENDANT:  Wine with dinner last night;

4    probably two glasses.

5          THE COURT:  Does the fact that you had wine with

6    dinner last night, as you've indicated two glasses, in any

7    way affect your ability to hear, understand and respond to

8    my questions, talk with your lawyer about your case or make

9    decisions about your case?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Have you taken any over the counter

12    medications for pain, allergies, sniffles, sleeplessness?

13          THE DEFENDANT:  Nothing.

14          THE COURT:  Nothing in the last twenty-four hours?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  As you sit here today, other than the

17    conditions you've told me about and the medications that are

18    prescribed for them, do you have any other psychological,

19    psychiatric or physical condition which affects your ability

20    to hear, understand and respond to my questions, talk with

21    your lawyer about your case or make decisions about your

22    case?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  You are proposing to plead guilty to

25    Count One of a two count Information.  Is that correct, sir?

18

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Have you read the Information?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Then you have a copy of it, is that

5    correct?

6              THE DEFENDANT:  I have it in front of me.

7              THE COURT:  The Information in Count One charges

8    you with Tax Evasion for the tax year 2006.  That is the

9    count that you are proposing to plead guilty to.  Is that

10   correct?

11             THE DEFENDANT:  That is correct, Your Honor.

12             THE COURT:  The United States Attorney alleges in

13   that count that:  From on or about January 1, 2006 through

14   on or about April 15, 2007, in Monongalia County, in the

15   Northern District of West Virginia--now that sets the stage

16   and they must be able to prove that in order for the Court

17   to have jurisdiction over this particular criminal charge.

18   Do you understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Next they alleged and must be able to

21   prove that it was you who committed this crime.  They must

22   be able to prove that you, David Rees, did willfully, not

23   accidentally, not unwillfully, not unknowingly, willfully

24   attempt to evade and defeat a large part of the income tax

25   due and owing by him, you, to the United States of America

19

1   and imposed by Title 26 of the United States Code.  Then it

2   goes on to allege:  in the approximate amount of $96,554.00

3   in a manner in which he paid personal expenses on a credit

4   card in the appropriate--in the approximate amount of

5   $533,152.00, but only reported personal income to the IRS on

6   a false personal income tax return in the approximate amount

7   of $188,316.00.

8   In violation of Title 26, United States Code, Section 7201.

9   Do you understand that's what the Government must be able to

10  prove?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Do you understand that you have certain

13  rights with respect to that charge and I'm going to go over

14  them under Rule 5 of the Federal Rules of Criminal

15  Procedure, this being your first appearance?  You have a

16  right to remain silent.  If you give up your right to remain

17  silent, anything that you say can and will be used against

18  you in this or any other court of law.  Even if you may have

19  previously made a statement, the fact that you did does not

20  obligate you to make a statement to the authorities in the

21  future.  If you start to make a statement you have a right

22  to stop in mid-word or sentence, stand on your right to

23  remain silent and say nothing further.

24      You have the right to the assistance of counsel for your

25  defense.  You may retain your own counsel but if you were

1    unable to retain counsel, you have a right to apply to the

2    Court and ask the Court to consider appointment of counsel

3    for you.  Whether appointed or retained, you have a right to

4    counsel at every stage of the proceedings against you and

5    during any questioning by the authorities.  Do you

6    understood, and did you understand that you had those rights

7    even before today?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Now, do you also understand that you

10   have a right under the United States Constitution to have

11   the Government present its case, the charges that it wants

12   to bring, through what is called a Grand Jury process?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  A Grand Jury, Mr. Rees, is a group of

15   sixteen or more persons who are selected from within, in

16   this case the Northern District of West Virginia.  They

17   would meet in a room such as this.  In fact, Grand Jury

18   attending Clarksburg would meet in this room.  They act as a

19   screening committee.  What they do is they hear witnesses,

20   they receive evidence, presented to them largely by the

21   United States Attorney's Office.  However, they have a right

22   to subpoena such witnesses as they choose to subpoena.  In

23   other words, they can take over an investigation and start

24   directing it in a direction that they want.  Once they have

25   heard whatever evidence it is they are going to hear on a

1   particular matter, then they excuse everyone but the Grand

2   Jurors who heard that evidence from the room and they

3   deliberate in private concerning the evidence they have

4   heard and they take votes and their votes are to decide

5   whether there is probable cause to believe that a crime was

6   committed in violation of federal law and that in this

7   particular case you were the person who committed that

8   crime, or the accused is the person who committed the crime.

9   If twelve or more of the sixteen or more Grand Jurors who

10  heard the evidence believe there is such probable cause then

11  they return what is called a true bill or an Indictment and

12  the Indictment then becomes the formal written statement of

13  a criminal charge against an individual.  Of course if

14  twelve or more cannot agree that there is such probable

15  cause, then they do not return an Indictment.  They return

16  what's called a no true bill.

17      Probable cause is a legal word of art.  It generally

18  means is something more likely than not to have occurred.

19  That's a very lay definition of probable cause.

20      The Prosecutor is not present during any of their

21  deliberations; nor are any of the investigatory witnesses.

22  This was set up in the Constitution to protect the

23  individual citizens, such as yourself, against excesses of

24  an arm of the Government.  It was borne out of an experience

25  that the founding fathers had with the previous government,

1   which was the King of England.

2       No one can force you to give up this right to the Grand

3   Jury process; however, you can voluntarily, freely,

4   knowingly, intelligently give it up if that's what you want

5   to do.  By doing so there will be no Grand Jury process and

6   it's your way of saying I consent to the United States

7   Attorney's Office filing directly against me, without going

8   through a Grand Jury, this one count--actually two count

9   Information, Count One of which I'm proposing to plead

10  guilty to.  Do you understand everything I've just told you

11  about the Grand Jury?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Do you want to give up your right to

14  the Grand Jury process?

15          THE DEFENDANT:  I'd like to give up my right to the

16  Grand Jury process.

17          THE COURT:  That's your own free, voluntary,

18  knowing and intelligent decision?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  I'm going to then provide

21  to you a waiver of the Indictment process and you may look

22  through that with your counsel and if you want to confirm

23  what you've just told me orally, then you may sign that

24  document.

25      (Pause - Defendant and Counsel reviewing document)

1          THE COURT:  Now, Mr. Rees, while that's being

2     signed, Count Two of this one count Information (sic)

3     charges you with False Form 941 Tax Return and the United

4     States Attorney alleges in that that:  On or about January

5     31, 2007, in or near Monongalia County, West Virginia, in

6     the Northern District of West Virginia, the defendant, David

7     Rees willfully made and willfully subscribed a false Form

8     941 tax return which contained and was verified by a written

9     declaration that it was made under penalties of perjury, and

10    which he did not believe to be true and correct as to every

11    material matter, in that the defendant was paying many of

12    his employees cash at AKA Enterprises, and such cash was not

13    declared on that Form 941 tax return, in violation of Title

14    26, United States Code, Section 7206(1).

15         The reason I raise this is it is the second count of the

16    two count Information that you're agreeing be filed directly

17    against you.  I understand you're not going to plead guilty

18    to that count but you understand that it is going to be used

19    in the overall sentencing process.  Is that correct?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  The Waiver of Indictment as signed by

22    Mr. Rees, countersigned by counsel and now countersigned by

23    me as having been signed in my presence, is ordered filed

24    and made a part of the record.

25         How did you and Mr. Grimes get along as lawyer and

24

1    client?

2            THE DEFENDANT:  Very well, Your Honor.

3            THE COURT:  You retained his services, did you?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  How did you and your local counsel get

6    along?

7            THE DEFENDANT:  Very well also.

8            THE COURT:  Did you discuss with Mr. Grimes and/or

9    local counsel the elements of the charge that is contained

10   in Count One, the charge you're proposing to plead guilty

11   to?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Did you discuss with Mr. Grimes and/or

14   your local counsel the evidence that the Government says it

15   has and will use to prove the elements of the crime charged

16   against you in Count One of the Information?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Did you actually review the evidence,

19   in other words, any disclosures that were made to your

20   counsel as part of the on-going investigation and informal

21   prosecution of this case?

22           THE DEFENDANT:  Yes, Your Honor; we went over it

23   daily.

24           THE COURT:  How many times would you say you and

25   Mr. Grimes and/or local counsel got together and talked

1   about his matter?  Rough guess.

2           THE DEFENDANT:  Fifty or sixty times.

3           MR. GRIMES:  Judge, if I could help here.  We

4   actually prepared a fairly extensive, with other co-counsel,

5   a fairly extensive reconstruction of the tax circumstances,

6   not just of AKA, but any related companies.  We were sharing

7   that information all along and we were doing it with the

8   Government, so fifty or sixty times meeting definitely with

9   the client, numerous other meetings between us and

10  representatives of the Government going over these various

11  numbers.

12          THE COURT:  And you concur in that, Mr. Rees?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Now, after reviewing everything and

15  talking with your lawyers on numerous occasions, did you

16  come to a conclusion in your mind that if you went to trial

17  the Government could prove the elements of the offense

18  charged in Count One against you?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did you reach that conclusion on your

21  own?  In other words, was it an independent reaching of the

22  conclusion or was it something that was fobbed off or forced

23  on you by your counsel?

24          THE DEFENDANT:  No.  It was independent, Your

25  Honor.

26

1          THE COURT:  Did you discuss with your lawyers the

2     criminal proceedings that you have been going through and

3     will continue to go through?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Did you and your lawyers discuss how a

6     jury trial would be conducted if you did not plead guilty?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Did you and your lawyers discuss the

9     statutory maximum penalty that you subject yourself to by

10    pleading guilty to Count One of the Information?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Then you understand that--from that

13    discussion and from paragraph two of your written plea

14    agreement that by pleading guilty to Count One you subject

15    yourself to not more than five years of imprisonment, not

16    more than two hundred and fifty thousand dollars in fine, or

17    both fine and imprisonment, plus a period of supervised

18    release of at least two years but not more than three years?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  You understand further that supervised

21    release is in addition to any term of imprisonment?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Did you and your lawyers discuss how

24    the United States District Judge, Judge Keeley, will use the

25    Uniform Sentencing Guidelines in the sentencing process to

1    assist her in determining whether the actual sentence that

2    she is going to impose is fair and reasonable under the law

3    and facts applicable to your case and is within that

4    statutory maximum that I just reviewed?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Did you and your lawyers discuss that

7    you have a right to appeal your conviction and your sentence

8    to the Fourth Circuit Court of Appeals within fourteen days

9    of the Judge's oral announcement of the sentence against

10   you?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Did you also discuss with your lawyers

13   and understand from that discussion that you may

14   collaterally attack or collaterally challenge the sentence

15   and how that sentence is being executed, carried out, once

16   it's imposed by filing a motion under 28 U.S.C., Section

17   2255?  That's commonly called a habeas corpus motion.

18             MR. GRIMES:  Judge, I don't believe we specifically

19   discussed that so if we could just take a moment.

20             THE COURT:  Sure.  Absolutely.

21        (Pause - Defendant and counsel conferring)

22             THE DEFENDANT:  I understand, Your Honor.

23             THE COURT:  In fact if you'll turn to paragraph

24   fourteen of your written plea agreement, did you understand

25   from your review of that written plea agreement that if your

1   actual sentence is equal to a guideline calculated sentence

2   which has a total offense level, before any reduction for

3   acceptance of responsibility, the way I read this, of 20 or

4   lower, then you give up your right to appeal that sentence

5   to the Fourth Circuit Court of Appeals and you give up your

6   right to collaterally attack or challenge that sentence by

7   filing a writ of habeas corpus type motion under 28 U.S.C.,

8   Section 2255?  Do you understand that?

9           THE DEFENDANT:  Yes.

10           THE COURT:  And that's the way you understood

11   paragraph fourteen of your written plea agreement?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  You only keep those rights if the

14   actual sentence imposed is the same as or equal to a

15   guideline sentence with a total offense level, before any

16   reduction for acceptance of responsibility, is higher than a

17   level 20, is that correct?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  And you intended to give up those

20   rights by signing the written plea agreement with paragraph

21   fourteen in it?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And nothing about your understanding of

24   paragraph fourteen, or for that matter any of the other

25   provisions in the agreement has changed since you signed it

1    on November the 21st of last year and today?

2             THE DEFENDANT:  That's correct.

3             THE COURT:  Did you ask your lawyers questions?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  Did they answer the questions that you

6    asked?

7             THE DEFENDANT:  Yes, sir.

8             THE COURT:  Is there any question that you asked

9    your lawyers that you think they improperly refused to

10   answer?

11            THE DEFENDANT:  Not at all, sir.

12            THE COURT:  Is there anything you asked your

13   lawyers to do for you that you think they improperly refused

14   to do?

15            THE DEFENDANT:  No, sir.

16            THE COURT:  Are you completely satisfied with the

17   legal assistance, the advice, the actions and the counseling

18   that have been provided to you by your lawyers?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Can you think of anything that they

21   should have done and did not do in your behalf?

22            THE DEFENDANT:  Not at all.

23            THE COURT:  Can you think of anything that they did

24   do and as you look back on what they did do, you wish they

25   hadn't done that?

30

1           THE DEFENDANT:  No.

2           THE COURT:  Mr. Rees, did your lawyers promise you

3    a specific amount of time of imprisonment or a specific

4    sentence from the United States District Judge when it comes

5    time for your sentencing some six or eight weeks from now?

6           THE DEFENDANT:  They did not.

7           THE COURT:  Do you still have the plea agreement in

8    front of you?

9           THE DEFENDANT:  Yes, sir.

10           THE COURT:  Did you read each and every line of

11    that written plea agreement on November the 21st of 2012?

12           THE DEFENDANT:  I did, Your Honor.

13           THE COURT:  Did you and your lawyers, one or the

14    other or both, go over each and every line of that plea

15    agreement before you signed it?

16           THE DEFENDANT:  We did, Your Honor.

17           THE COURT:  Did you understand each and every line

18    of that written plea agreement before you signed it?

19           THE DEFENDANT:  I did, Your Honor.

20           THE COURT:  Did you discuss your decision to sign

21    the plea agreement with any relatives or any close personal

22    friends before you signed it?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Is there any term or provision in the

25    agreement that you now want time to privately discuss with

31

1    counsel?

2            THE DEFENDANT:  No, Your Honor.

3            THE COURT:  Does the written agreement, as it now

4    exists in front of the Court, represent all of your deal

5    with the United States Attorney's Office?

6            THE DEFENDANT:  It does, Your Honor.

7            THE COURT:  In other words, has any one, including

8    your own attorney, made any other or different promises or

9    assurances of any kind to you in order to get you to plead

10   guilty then what are contained in the written plea

11   agreement?

12           THE DEFENDANT:  They did not.

13           THE COURT:  Now are you familiar with the term

14   nonbinding terms and provisions?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Does that mean to you--that term,

17   nonbinding, mean that while you and Mr. McWilliams' office

18   may have agreed to certain things in this agreement, the

19   United States District Judge, the Court, had no role in

20   negotiating, no role in preparing or signing the agreement

21   and in fact will not even consider the agreement until the

22   Presentence Investigation Report is prepared, until there's

23   an opportunity for you and the Government to have objected

24   to that report and until the Court has had an opportunity to

25   have hearings on either the objections or at sentencing or

32

1    both?

2            THE DEFENDANT:  I understand.

3            THE COURT:  Only then will the Court take up the

4    nonbinding provisions in this agreement.  Do you understand

5    that?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  And that includes the nonbinding

8    stipulations that are contained in paragraphs six (a), (b),

9    (c), (d), (e), (f), sub (1), sub (2), sub (3), sub (4), (g),

10   (h), and sub (1) of (h).  Is that correct?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  And it further extends to paragraph

13   seven of your plea agreement which attempt to stipulate

14   relevant conduct provable by the United States not to exceed

15   the following amounts and levels?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT: But under paragraph eight, you reserve

18   the right to fight with the Government at sentencing over

19   whether your relevant conduct is less than a million dollars

20   and they don't have to concede that it is.  Is that correct?

21           THE DEFENDANT:  That's correct, Your Honor.

22           THE COURT:  And in addition you agree to fight over

23   whether, under the guidelines, a sophisticated means and

24   your role in the offense may be applicable enhancements or

25   not?

33

1          THE DEFENDANT:  That is correct.

2          THE COURT:  You understand that it will be the

3    United States District Judge who will make the decision

4    based upon a preponderance of whatever evidence is presented

5    to him at the time of that sentencing hearing as to whether

6    the various enhancements, sophisticated means and role of

7    the offense, are applicable and if they are they could drive

8    up the amount of time under the guideline sentence as well

9    as the actual sentence.  You understand that?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  And you understand it will be up to the

12   District Judge to determine whether or not, from a

13   preponderance of the evidence at your sentencing hearing,

14   your relevant conduct is more or less than a million dollars

15   and if it goes adverse to you, you understand that it will

16   drive up your guideline sentence and your actual sentence

17   within the statutory maximum?

18          THE DEFENDANT:  I understand.

19          THE COURT:  Under paragraph ten you and the United

20   States have agreed that if you meet certain preconditions,

21   the Government will recommend to the District Judge that you

22   receive a two level reduction for acceptance of

23   responsibility and three levels if applicable and recommend

24   that any sentence of incarceration should be at the lower

25   end of the applicable guideline range?

34

1          THE DEFENDANT:  I understand.

2          THE COURT:  Now do you also understand that the

3     lowest end may not necessarily be what the District Judge

4     gives?

5          THE DEFENDANT:  I do understand.

6          THE COURT:  Do you understand further that if you

7     don't get the two level reduction for acceptance of

8     responsibility, the additional one level if applicable for

9     timely acceptance or the lowest end--and/or the lowest end

10    of whatever the applicable guideline range is as a sentence

11    of incarceration, that the District--that you will have no

12    right to withdraw your guilty plea?

13         THE DEFENDANT:  I do understand.

14         THE COURT:  Do you understand that by entering a

15    guilty plea today you are admitting each and every element

16    and fact alleged in the Information relative to the crime

17    charged in Count One?

18         THE DEFENDANT:  I do understand.

19         THE COURT:  And it's a solemn thing that you're

20    doing and you don't get to withdraw that because you don't

21    get what you may be hoping for or expecting by way of a

22    guideline or actual sentence.  Do you understand that?

23         THE DEFENDANT:  I do understand.

24         THE COURT:  Is there anything about what we've

25    discussed so far, mostly me telling you and you answering,

1  that you need time to talk over with your lawyer or you need

2  a further explanation of, sir?

3          THE DEFENDANT:  I think I'm prepared.

4          THE COURT:  Has anyone attempted in any way to

5  force you to plead guilty?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Has any one threatened you in order to

8  get you to plead guilty?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has any one threatened any one who is

11  close to you in a personal way in order to get you to plead

12  guilty?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Is your decision to plead guilty to

15  Count One your own free, voluntary, knowing and intelligent

16  decision?

17          THE DEFENDANT:  It is.

18          THE COURT:  Mr. Rees, do you believe you are guilty

19  of the offense charged in Count One of the Information and

20  each and every element in fact as charged in that count?

21          THE DEFENDANT:  I do, Your Honor.

22          THE COURT:  Do you understand that that is a felony

23  charge?

24          THE DEFENDANT:  I do, Your Honor.

25          THE COURT:  By pleading guilty to it you will be

36

1    adjudicated guilty of a felony?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Folks who are convicted of a felony

4    charge may lose the right to vote, the right to run for and

5    hold a public office, the right to serve on a grand or

6    petit, state or federal jury while they're incarcerated, and

7    perhaps longer dependent upon the law and rules in the area

8    in which they're living after release.  Do you understand

9    that?

10           THE DEFENDANT:  I do, Your Honor.

11           THE COURT:  Do you also understand that you will

12   lose the right to possess a firearm or ammunition for a

13   firearm as those terms are defined under federal law and

14   that that right is permanent unless the Judge or the Court

15   in--Court of the United States, should restore you to your

16   civil rights?

17           THE DEFENDANT:  I understand.

18           THE COURT:  And that's not likely to ever happen.

19   You understand that?

20           THE DEFENDANT:  I do understand, sir.

21           THE COURT:  Do you understand that your actual

22   sentence, and for that matter any guideline sentence used to

23   reach an actual sentence, may be driven up in the number of

24   months or time to be served by virtue of any prior firearm

25   offense convictions, prior violent felony offense

1    convictions or prior drug offense convictions that you may

2    have in your criminal history, if any?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you also understand that the Judge

5    is duty bound to take into account any prior criminal

6    history that you may have in the sentencing process?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Now did you and your lawyers review a

9    Uniform Sentencing Guideline Chart similar to the one I'm

10    holding up?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did they review with you how the

13    criminal history categories going across the top worked?

14          THE DEFENDANT:  They did.

15          THE COURT:  Did they review with you how offense

16    levels going down the left-hand column of the chart worked?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And did they show you how offense level

19    going across intersects with a criminal history line coming

20    down relative to a range of months of imprisonment?

21          THE DEFENDANT:  They did, Your Honor.

22          THE COURT:  Do you understand that while the

23    lawyers can show you how the chart works and in the process

24    even estimate for you a potential guideline calculated

25    sentence that you might suffer, you can't take any estimate

38

1    that they may have given you as a promise or as a guarantee

2    by them to you--

3          THE DEFENDANT:  I understand that.

4          THE COURT: --that the District Judge will see it

5    the same way and in fact if the Judge sees it differently,

6    the fact that he saw it differently is of no moment.  You

7    will not be permitted to withdraw your guilty plea and it is

8    not going to be a basis for you to get out of your

9    conviction or your plea because of what your lawyers might

10   have told you.  I'm telling you today that only the District

11   Judge has a right to set the sentence.

12         THE DEFENDANT:  I understand.

13         THE COURT:  And I don't want you pleading guilty by

14   any illusion that you might have that may have--or any hope

15   that you might have had that comes as a result of

16   discussions and review of the guideline chart with your

17   counsel.

18         THE DEFENDANT:  I fully understand.

19         THE COURT:  That's the way you understood it from

20   them; is that correct?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Now do you understand that the

23   supervised release of between two and three years is not

24   only in addition to any actual sentence of incarceration

25   that you may be required to serve, but that it comes with

39

1   rules that you have to live by while you're on it and should

2   you violate any of those rules and a petition be filed

3   saying that you did and it be proved at a hearing that you

4   did violate rules, that you could have that release revoked

5   and you could be reincarcerated?

6           THE DEFENDANT:  I understand.

7           THE COURT:  Did you understand that you'll be

8   required to pay a special assessment of one hundred dollars

9   under Title 18, United States Code, Section 3013?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Did you understand that you--that an

12  amount of restitution will in fact be determined at the time

13  of your sentencing and you will be required to pay

14  restitution?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And do you further understand that that

17  will be--that will be put into the form of a judgment order

18  and it will be able to be collected against assets, wages,

19  things that you may have going forward in the future?

20          THE DEFENDANT:  I do understand.

21          THE COURT:  And you understand that it will carry

22  interest with it?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that if you have the

25  financial ability to pay the cost of your own incarceration,

1     those costs could be assessed against you?

2               THE DEFENDANT:  Yes, sir.

3               THE COURT:  Mr. Rees, incarceration is costing

4     approximately twenty-six hundred dollars per month; halfway

5     house confinement is approaching sixteen hundred dollars a

6     month and supervised release is running around--between two

7     fifty and three hundred dollars a month and those costs are

8     likely to continue to

9     Increase.  Do you understand that?

10              THE DEFENDANT:  I do, Your Honor.

11              THE COURT:  And those are the costs that you could

12    be subjected to if you have the ability to pay them?

13              THE DEFENDANT:  I understand.

14              THE COURT:  And you can also be required to pay a

15    fine up to two hundred and fifty thousand dollars if the

16    Judge finds that you have the ability to pay a fine?

17              THE DEFENDANT:  I understand.

18              THE COURT:  Do you understand that as a convicted

19    felon you will be required to give a DNA sample?

20              THE DEFENDANT:  I do, Your Honor.

21              THE COURT:  Is there anything about the possible

22    consequences of your proposed plea of guilty that you don't

23    understand or that you time to talk over with your lawyer or

24    you want to ask some questions about?

25              THE DEFENDANT:  No, I understand fully, Your Honor.

41

1          THE COURT:  Mr. Rees, do you understand there is no

2     parole in the federal system and what that means is that you

3     will do the time that the District Judge sentences you to

4     serve?

5          THE DEFENDANT:  I do understand that, Your Honor.

6          THE COURT:  When I call upon you to plead today, do

7     you understand that you have a right to stand silent, in

8     which case I would enter a plea of not guilty for you; you

9     have a right to enter a not guilty plea on your own or by

10    counsel, in which case there would be a not guilty plea

11    entered of record and we would proceed forward in another

12    way or you may plead guilty?  Do you understand that?

13         THE DEFENDANT:  I do, Your Honor.

14         THE COURT:  Do you understand, as I indicated

15    earlier, that pleading guilty admits each and every element

16    of the crime charged and does away with any future trial by

17    a jury on this charge?

18         THE DEFENDANT:  I understand fully.

19         THE COURT:  Now you have a right to a jury trial,

20    sir.  That's guaranteed to you by the United States

21    Constitution.  At that trial you're presumed innocent of all

22    of the charges that may be made against you.  The Government

23    has to prove your guilt beyond a reasonable doubt using only

24    lawful evidence.  You're entitled to the assistance of a

25    lawyer for your defense.  You have a right to see and to

1   hear all the witnesses and have them cross-examined in your

2   defense.  You have a right at that trial to decline to

3   testify or to offer any evidence because you have no burden

4   of proving your own innocence.  The Government has the

5   burden of proof and it never shifts to you.  However, it's

6   like any other right, if you want to give up your right to

7   remain silent, you can and you may take the stand and

8   subject yourself to cross-examination.  You may call

9   witnesses and if your witnesses were unwilling to appear and

10  take the oath, the Court, through the subpoena power of the

11  Court, at your request, could order them to appear and take

12  the oath.

13      If you decide not to offer evidence; if you decide not

14  to testify; the fact that you did not testify or offer

15  evidence is not and cannot be used as proof that you did

16  what you're accused of and finally, you have a right to a

17  unanimous jury verdict.

18      Do you understand that you have all those rights that

19  are related to a jury trial?

20          THE DEFENDANT:  I do, Your Honor.

21          THE COURT:  And do you want to give up all those

22  rights by pleading guilty in which case there will be no

23  jury trial?

24          THE DEFENDANT:  I'd like to give up those rights.

25          THE COURT:  Is that your own free, voluntary,

43

1    knowing and intelligent decision?

2              THE DEFENDANT:  It is, Your Honor.

3              THE COURT:  Now, Mr. Rees, I've asked you a lot of

4    questions.  Have you understood each and every question that

5    I have asked you?

6              THE DEFENDANT:  I have, Your Honor.

7              THE COURT:  Have you truthfully answered each and

8    every question that I have asked you?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Do you need any additional time to talk

11   with your attorneys before I entertain whatever plea it is

12   that you are going to make?

13             THE DEFENDANT:  I don't need any further time.

14             THE COURT:  Have I asked the questions that are

15   appropriate in this particular case relative to Rule 11, Mr.

16   McWilliams?

17             MR. MCWILLIAMS:  Yes, Your Honor.

18             THE COURT:  How about you, Mr. Grimes?

19             MR. GRIMES:  Yes, Your Honor.

20             THE COURT:  All right.  Then, without further ado,

21   Mr. Rees, will you please stand in your place?

22        (Defendant Standing)

23             THE COURT:  David Rees, how do you plead to the

24   first count of the Information which charges you with Felony

25   Tax Evasion for the Tax Year 2006 between January 1, 2006

Gandee - Direct                    44

1    and April 15, 2007, within the Northern District of West

2    Virginia, a felony?

3             THE DEFENDANT:  Guilty, Your Honor.

4             THE COURT:  Is that your own free, voluntary,

5    knowing and intelligent plea of guilty to that felony

6    charge?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  Mr. Grimes, do you know if your client

9    will make a statement today or make it only at his

10   sentencing hearing?

11            MR. GRIMES:  We'll reserve for time of sentencing.

12            THE COURT:  Very good.  Mr. Rees, you may sit back

13   down.

14      (Defendant Seated)

15            THE COURT:  Mr. McWilliams, I'll entertain any

16   evidence you want to offer up in support of the plea.

17            MR. MCWILLIAMS:  United States calls Special Agent

18   Jason Gandee.

19            THE COURT:  Mr. Gandee, is it?

20            THE WITNESS:  Yes.

21            JASON GANDEE, GOVERNMENT'S WITNESS, SWORN

22            THE CLERK:  You may be seated.

23            THE COURT:  You may inquire.

24                      DIRECT EXAMINATION

25   BY MR. MCWILLIAMS:

1    Q.   What is your occupation, sir?

2    A.   I'm a Special Agent with IRS Criminal Investigations.

3    Q.   And how long have you been a Special Agent with IRS?

4    A.   Approximately 16 years.

5    Q.   What's your post of duty?

6    A.   Parkersburg, West Virginia.

7    Q.   Now are you one of the agents that investigated the case

8    of Mr. Rees?

9    A.   I am.

10   Q.   And tell the Court how Mr. Rees came to the attention of

11   the IRS?

12   A.   Through a public corruption investigation that started

13   in the Southern District of West Virginia.

14   Q.   And what was his occupation at the time?

15   A.   A businessman in Morgantown.  His primary occupation was

16   the owner and operator of AKA Enterprises, which encompassed

17   a restaurant, a bar and a pizza shop.

18   Q.   What was the name of the restaurant and bar?

19   A.   The restaurant was the Vintage Room and the bar was Bent

20   Willey's.

21   Q.   And is it fair to say that's one of the largest

22   restaurateurs--non-resort restaurateurs in the State?

23   A.   Bar owner for sure.  The restaurant was a smaller

24   enterprise.  The bar was a high income producing entity.

25   Q.   And did the IRS instigate an undercover operation

1    involving the defendant?

2    A.   We did.

3    Q.   And what was the basis or the gist of what that

4    investigation showed?

5    A.   It showed that the business was actually worth more than

6    the reported receipts and so our investigation proceeded

7    from there.

8    Q.   And did the investigation result in the execution of

9    various search warrants?

10   A.   Yes it did.

11   Q.   And did it also investigate--involve investigation of

12   his CPA in Morgantown?

13   A.   It did.

14   Q.   And was that CPA also a target?

15   A.   Yes.

16   Q.   Did that CPA cooperate?

17   A.   At first initially to a limited degree and then not.

18   Q.   Did Mr. Rees, through his attorney and personally,

19   cooperate through the various phases of this investigation?

20   A.   Mr. Rees has cooperated from the onset.

21   Q.   Would you tell the Court generally how Mr. Rees was

22   getting money out of the business that was used for personal

23   living that did not get reported on his 2006 tax return?

24   A.   Well, you had high cash producing entities, specifically

25   the bar and you also had a company credit card which was

1    utilized so there were large sums of cash that were not

2    deposited and used for personal means and also the credit

3    card was used for personal expenses and not paid by Mr.

4    Rees, but rather the company.

5    Q.  And did this occur in Monongalia County?

6    A.  It did.

7    Q.  And did he in fact file, based on your investigation, a

8    false 2006 income tax return where he reported approximately

9    $188,316.00?

10   A.  He did.

11   Q.  And I realize these figures fluctuate through the

12   investigation, the Revenue Agent's investigation, plus a

13   civil investigation also, is that correct?

14   A.  There was.

15   Q.  And is it fair to say that the amount that was

16   unreported exceeded $90,000.00 for that tax year?

17   A.  The amount of tax; that's correct.

18          MR. MCWILLIAMS:  I have no further questions.

19          THE COURT:  Mr. Grimes, any questions?

20          MR. GRIMES:  Just very briefly, Your Honor.

21          THE COURT:  Yes, sir.

22                       CROSS EXAMINATION

23   BY MR. GRIMES:

24   Q.  Agent Gandee, good morning.  How are you, sir?

25   A.  Good.  How are you?

1    Q.   Would you agree that once the search warrants were

2    executed at Mr. Rees' home and businesses that's the first

3    time he had actual notice of your investigation?

4    A.   That's correct.

5    Q.   And as soon as that happened he secured counsel, myself,

6    to represent him personally and William Chadwick, an

7    associate of mine, to represent his corporations?

8    A.   That's correct.

9    Q.   And you've outlined to the Court that the primary

10   company, AKA Enterprises is the one that operates the

11   bar/restaurant business?

12   A.   That's right.

13   Q.   In fact the investigation found that Mr. Rees had

14   multiple businesses that he was operating funded primarily

15   through AKA?

16   A.   That's right.

17   Q.   The numbers that were calculated in terms of tax

18   liabilities, they in fact were calculated through Mr.

19   Chadwick and his assistance and me providing that to the

20   Government as part of the overall global reconstruction, is

21   that right?

22   A.   That's right.

23   Q.   So in terms of Mr. Rees' cooperation with the

24   Government, on a scale of one to ten in terms of stepping up

25   to the plate once he realized this problem, are you able to

1    give the Court a--

2    A.  I would say a ten.

3         MR. GRIMES:  Thank you very much.

4                    EXAMINATION BY THE COURT

5    BY THE COURT:

6    Q.  Mr. Gandee, you understood from discussions with Mr.

7    Rees that before he filed the tax return he knew that he

8    was--and understood that he was using cash out of the

9    business and using the credit cards to pay personal expenses

10   as opposed to only company related debt?

11   A.  Well, our investigation had indicated that strongly and

12   then once Mr. Rees was made aware of the investigation, Mr.

13   Rees admitted as much, yes.

14   Q.  And he knew that when he filed the return that's in

15   question?

16   A.  Yes.

17        THE COURT:  All right.  Very good.  I have no

18   further questions.  Do my questions evoke any additional

19   questions by counsel?

20        MR. MCWILLIAMS:  No, Your Honor.

21        MR. GRIMES:  I have nothing further.

22        THE COURT:  All right.  You may step back.  Thank

23   you.

24      (Witness excused from stand)

25        THE COURT:  Were you able to hear the testimony and

1  follow the testimony of Special Agent Gandee?

2          THE DEFENDANT:  I was, Your Honor.

3          THE COURT:  Is there anything about your

4  involvement in this crime in Count One of the Information,

5  as described by Mr. Gandee in questioning, that you disagree

6  with?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  All right.  Based upon the testimony

9  and the answers to the colloquy under Rule 11 the Court will

10  enter an appropriate order this afternoon accepting Mr.

11  Rees' plea of guilty to Count One of the Information as

12  knowingly, voluntarily, freely and intelligently having been

13  given; that it's supported independent of the plea itself by

14  the testimony of Special Agent Gandee.

15      The Court will further find that he's competent to enter

16  the plea that he has entered.  He understands the terms and

17  provisions of his written plea agreement, knowingly and

18  voluntarily entered into it, was never coerced; that he

19  understands the rights that he's giving up by pleading

20  guilty.  He understands the consequences of pleading guilty,

21  including the statutory maximum penalty that he subjects

22  himself to by pleading guilty.

23      The Court will make other additional findings relative

24  to the guidelines and the specific consequences that he's

25  testified to here today.

51

1      Now, this is his first appearance in front of the Court.

2   What say the Government relative to release on conditions

3   pending sentencing by Judge Keeley?

4           MR. MCWILLIAMS:  We would ask that he be released

5   on his own recognizance, Your Honor, and at some point soon

6   I would ask that if he has a passport that he surrender it.

7           THE COURT:  Other than a passport surrender and not

8   obtaining a passport, is there any other restriction on his

9   travel?

10          MR. MCWILLIAMS:  I don't think that's necessary,

11  Your Honor.

12          THE COURT:  Very good.  And no--and you don't have

13  to stand up, Mr. McWilliams.  Is there any need for the

14  Court to go into the things that we use in drug related

15  cases in this case?

16          MR. MCWILLIAMS:  No, Your Honor.

17          THE COURT:  All right then.  How about you, Mr.

18  Grimes, anything additional?

19          MR. GRIMES:  Certainly concur in the Government's

20  recommendation.  Mr. Rees is a long time--several decades of

21  contact with Morgantown, several ties to the community, both

22  business wise, family wise, et cetera, no prior criminal

23  record of any sort, no risk of flight.  He does own a

24  property in the Bahamas that he's been rehabilitating for

25  purposes of selling and we asked about the back and forth,

1   and every time that occurred he notified the Government by

2   e-mail that he was taking that trip because it was damaged

3   during the hurricane so they're repairing it and putting it

4   up for sale.  We hope the proceeds are going to go a long

5   way toward meliorating some of the debt that he owes.  We

6   would ask that there be no restriction on his travel or at

7   least restriction only be that we give notice to the

8   Government as we've been doing.

9         THE COURT:  Well, as I understand it now you need a

10   passport in order to fly out of the country to the Bahamas,

11   don't you?

12         MR. GRIMES:  It's only just for closing.  We don't

13   expect we're going to have to go back.

14         THE COURT:  All right.  Then that's fine.  I just

15   wanted to make sure we were all on the same page relative to

16   that portion of the order.

17      All right.  Mr. Rees, you're going to be released on

18   your own recognizance.  You're not to violate any federal,

19   state or local law while on the release.  You're to advise

20   the Court and your Pretrial Services Officer or Supervising

21   Officer in writing before you change your residence or your

22   telephone number.  Where are you living now, sir, generally

23   speaking?

24         THE DEFENDANT:  In Morgantown.

25         THE COURT:  You still live in Morgantown?

53

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  And that's been where

3    you've been living for a long time?

4          THE DEFENDANT:  Thirty years.

5          THE COURT:  All right, sir.  You're to appear in

6    Court as required and if you should--when you are sentenced

7    you're to surrender for service of that sentence as ordered

8    by the District Judge.  You will surrender your passport to

9    the Probation Officer at some point as he directs.  You're

10   not to attempt to obtain another passport while this is on

11   going or international travel document.  I believe that's

12   it.

13         MR. GRIMES:  Thank you, Your Honor.

14         MR. MCWILLIAMS:  Thank you, Your Honor.

15         THE COURT:  All right.  Then we'll be in recess--

16   now what you need--before I recess us, what I want you to

17   understand, Mr. Grimes, (sic) you'll have to go down and

18   meet with the United States Marshal Service briefly, then

19   come back up here and by then I'll have the modification of

20   this order setting conditions of release, you sign it at the

21   Clerk's desk and then you meet with Probation sometime later

22   this afternoon down at their office or later this morning

23   down at their office down the street and then you go about

24   your way.  Anything further.

25         MR. GRIMES:  No, Your Honor, thank you very much.

54

1          MR. MCWILLIAMS:  No, Your Honor.  Thank you.

2          THE COURT:  There being nothing, we'll be in

3    recess.  Thank you all.

4        (The hearing concluded at 11:09 a.m., 05-13-2013)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Linda L. Bachman, Certified Verbatim Reporter and Official Reporter of the United States District Court for the Northern District of West Virginia, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the above-styled action as digitally recorded and typographically transcribed by my.

I certify that the transcript fees and format comply with those prescribed by the Court and the judicial Conference of the United States.

Given under my hand this 18th day of November, 2014.


___/s/ Linda L. Bachman_____

Official Reporter, United States
District Court for the Northern
District of West Virginia